```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Dean C. Oblinger,              :

       Plaintiff,              :

    v.                         :    Case No. 2:11-cv-623

                               :    JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,    Magistrate Judge Kemp

       Defendant.              :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Dean C. Oblinger, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for social security disability benefits. That application was filed with a protective filing date of November 5, 2007, and alleged that plaintiff became disabled on November 1, 2006.

After initial administrative denials of his claim, plaintiff was given a hearing before an Administrative Law Judge on February 18, 2010. In a decision dated May 3, 2010, the ALJ denied benefits. That determination became the Commissioner's final decision on May 24, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on September 26, 2011. Plaintiff filed his statement of specific errors on October 31, 2011, to which the Commissioner responded on January 31, 2012. No reply brief has been filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 31 through 50 of the record. Plaintiff, who was 46

years old at the time of the hearing and is a high school graduate with some college, testified as follows.

Plaintiff last worked in 2004. He was a sanitation worker at a food processing plant. The job required a good deal of bending and lifting. He left that job to pursue more education and to address a child care situation. He was unable to complete his educational program, however, due to back pain. Plaintiff broke his back in 1984 and underwent a spinal fusion in 1985, and the pain has now recurred.

Plaintiff testified that his pain begins in his left hip and radiates down his left leg, although sometimes it radiates down both legs. His doctors have not recommended surgery. He experiences severe pain on a daily basis. Sometimes, depending on his level of activity the previous day, he must lie down all day. He treats the pain with Vicodin and Tylenol.

From a physical standpoint, plaintiff can stand about fifteen minutes at a time before his legs become numb. The same thing happens if he sits too long - about ten minutes in a straight chair, or thirty minutes in a recliner. He can occasionally lift a gallon of milk. He avoids climbing stairs. He can walk about 100 yards before needing to sit down.

On a daily basis, plaintiff is able to drive his children to school, and he can also drive to medical appointments. None of that involves driving more than ten minutes. He can squat, although getting back up is a problem, and can bend from the waist, but not very well. He did not believe he could do even a sedentary job because he needs to lie down six or seven hours a day just to reduce his pain level. He is able to read and watch television. Finally, he testified that he has had cortisone injections, a TENS unit, physical therapy, traction, acupuncture, and heat, but none of those have given him any lasting relief.

III. The Medical Records

The medical records in this case are found beginning on page 192 of the administrative record. The pertinent records can be summarized as follows.

The first set of records consist of office notes from plaintiff's general physician, Dr. Hollern, going back to 1999. Even then, plaintiff was described as "rather stiff" with limited forward flexion of his back and as experiencing pain with left lateral bending. He was referred to a back specialist. Other notes indicate ongoing low back pain with exacerbations from time to time. Some notes indicate normal reflexes and muscle strength, but there are other notes indicating difficulty obtaining patellar reflexes. Radicular symptoms were noted as early as 2003. A 2004 note shows that plaintiff was going to see a spine specialist again. By 2006, the diagnosis was chronic low back pain with intermittent radiculopathy. A note dated June 14, 2007 showed that plaintiff had been working with Dr. Fitz but was getting no relief from his pain. Dr. Hollern reported in October, 2007 that plaintiff had been seen by a specialist, Dr. Rea, but was not a surgical candidate. (Tr. 192-235).

Dr. Fitz filled out a questionnaire reviewing his treatment of plaintiff from 2004 to 2008. Plaintiff's condition was described as chronic low back pain and left leg pain. Pertinent findings included a limited range of lumbar motion and a scar over the lumbar spine. Dr. Fitz had prescribed Prednisone and Percocet, but only for flare-ups of plaintiff's back condition. Dr. Fitz noted that epidural steroid injections had not helped. He did not think plaintiff could bend, stoop, lift over fifteen pounds, sit for prolonged periods, or climb ladders. (Tr. 236-40). Dr. Fitz also submitted treatment notes indicating that therapy had not been helpful, and also reporting fairly normal objective test results, including normal strength and sensation and negative straight leg raising. An EMG was also essentially

negative, but an MRI study revealed spinal stenosis at L4-5 and L5-S1.  The notes also show complaints of numbness and pain radiating down both legs.  The report from the 2006 MRI also showed mild diffuse disk bulge at the L4-5 and L5-S1 levels and some mild bilateral foraminal narrowing at those levels, as well as degenerative changes beginning at L3.  (Tr. 241-54).  Later treatment notes showed increasing left leg pain, complaints of intermittent numbness and burning in the left leg, some decreased sensation in the left foot and left leg, and more steroid injections.  (Tr. 288-97).

    The file also contains a functional capacity assessment done by Dr. Cho, a state agency reviewer, on May 13, 2008.  Dr. Cho basically limited plaintiff to work at the light exertional level with some restrictions on climbing, balancing, stooping, kneeling, crouching and crawling.  Dr. Cho reported that there was a treating source statement regarding plaintiff's physical capacities in the file and that the treating source's conclusions were not significantly different from Dr. Cho's.  He also stated that "the findings of the ap [attending physician] are given controlling weight."  (Tr. 255-62).

    Dr. Herceg, who appears to be another physician in the same office as Dr. Fitz, examined plaintiff on November 10, 2008.  He reported that plaintiff had had problems for the past five or six years, and that his pain was worse with activity.  Examination of the lumbar spine showed a well-healed incision.  There was some kyphosis in the upper aspect of the lumbar spine, flexion and extension were limited, strength and reflexes were normal, and straight leg raising was positive on the left.  X-rays showed multilevel spondylosis with disc space narrowing and anterior osteophyte formation.  A CT myelogram done over a year before demonstrated degenerative changes with narrowing at the L3-4 and L4-5 levels.  Dr. Herceg's impression was post laminectomy,

lumbar spine, L2, lumbar spinal stenosis, and lumbar degenerative disc disease.  Surgery was not recommended based on these findings.  (Tr. 344-45).

On December 16, 2009, Dr. Fitz wrote a letter in which he provided his opinion as to plaintiff's functional capacity, and he attached a form used for that purpose.  Dr. Fitz recited plaintiff's history of injury, diagnoses and treatment as reflected in his notes, and stated that plaintiff was limited in his ability to stand and walk for prolonged periods of time due to leg pain associated with spinal stenosis, and in his ability to sit for prolonged periods of time due to multilevel degenerative disc disease.  He also could not lift over ten pounds and was limited in his ability to bend and twist at the waist.  Dr. Fitz stated that plaintiff "is unable to perform the essential functions of many occupations due to his limitations with regards to sitting, standing, walking, bending, twisting and lifting."  The physical capacities evaluation form attached limited plaintiff to six hours total of sitting, standing and walking during a work day.  (Tr. 356-58).

The last document in the medical portion of the file is a letter written by Dr. Rea from the Ohio State University Comprehensive Spine Center, dated December 14, 2010.  That letter post-dates the ALJ's decision and was not considered by him, so the Court will not discuss it further.

IV.  The Medical Expert's Testimony

Dr. Gaitens, a medical expert, was asked to provide testimony at the administrative hearing.  His testimony is found at pages 51-57 of the record.

Dr. Gaitens testified that he is board-certified in physical medicine and rehabilitation.  He reviewed the records concerning plaintiff's back condition and concluded that his impairment was not of sufficient severity, based on those records, to satisfy

the Listing of Impairments, particularly Section 1.04A.

Dr. Gaitens believed that plaintiff could lift 20 pounds occasionally and ten frequently, but he was limited in his ability to stand.  He could only stand five or six hours out of an eight-hour shift, and would need to change position every 45 minutes in order to do that.  He could sit for an hour to an hour-and-a-half at a time, with changes of position in between. He would also be limited in the areas of crouching, kneeling, crawling, and climbing, with the latter absolutely precluded. Plaintiff's medication would make working at heights or around moving machinery inadvisable.  This assessment was based on the records rather than plaintiff's testimony.  Dr. Gaitens saw no evidence of malingering in the medical records.

### V.  The Vocational Testimony

Mr. Rosenthal, a vocational expert, also testified at the administrative hearing.  His testimony begins at page 58.  He began by asking plaintiff a number of questions about past jobs, which included not only food sanitation worker but also some jobs in retail and a security guard position.   Mr. Rosenthal testified that plaintiff's past relevant work as a stock supervisor at a Sears store was light and skilled; the job as a sanitation worker was heavy and semi-skilled (although plaintiff did that job at the medium level); and as a security guard or gate guard as light and semi-skilled.  The stock clerk job was light and skilled.  Mr. Rosenthal noted that the record also indicated some other jobs, which were unskilled, medium exertional level positions.

Mr. Rosenthal was first asked to assume that plaintiff were limited as described in Exhibit 3F, which is the functional capacity assessment from Dr. Cho, the state agency reviewer.  If that were so, he could do still do the gate guard job.  Next, he was asked to assume the limitations appearing in Exhibit 9F,

which is Dr. Fitz's report. With those limitations, he could not work. Finally, if plaintiff had the abilities described by Dr. Gaitens in his testimony, he could perform the gate guard job as it is usually performed (though not necessarily how plaintiff performed it), and a full range of sedentary work.

VI. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 15 through 24 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, but not afterward. Second, the ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 1, 2006 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including degenerative disc disease and status-post lumbar fusion. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a limited range of light work, with the ability to sit, stand or walk for up to six hours a day so long as he could change positions at will. He also could occasionally bend, stoop, crouch, kneel and bend, but could not climb ladders, ropes, or scaffolds or work around unprotected heights or hazardous machinery. These restrictions did not preclude plaintiff from performing his past relevant work as a security gate guard. As a result, the ALJ found that plaintiff was not under a disability and was not entitled to benefits.

VII. Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises the following issues. First, he argues that the ALJ erroneously rejected the opinion of his treating physician, Dr. Fitz, instead crediting the opinion of Dr. Gaitens, which, he contends, was made unreliable by Dr. Gaitens' apparent lack of knowledge of certain aspects of the medical record. Second, he asserts that the ALJ denied him due process by refusing to allow his counsel to ask certain questions about his past relevant work. Third, he asserts that the hypothetical question posed to the vocational expert was defective because it did not take plaintiff's use of medications with substantial side effects into account. The Court generally reviews the administrative decision under this legal standard:

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human</u>

-8-

Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Court begins with plaintiff's contention that the opinion of his treating physician, Dr. Fitz, was improperly rejected, because that is a potentially dispositive issue.  It is well-established that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial.  Bull v. Comm'r of Social Security, 629 F.Supp. 2d 768, 780-81 (S.D. Ohio 2008), citing Cornett v. Califano, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979).

A physician's statement that plaintiff is disabled is not determinative of the ultimate issue.  The weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. §404.1527(d); Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).  In evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's

activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).

If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. Harris, 756 F.2d at 435. The Commissioner may have expertise in some matters, but cannot supplant the medical expert. Hall v. Celebrezze, 314 F.2d 686, 690 (6th Cir. 1963). The "treating physician" rule does not apply to a one-time examining medical provider, and the same weight need not be given to such an opinion even if it favors the claimant. Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994).

If the Commissioner does not give controlling weight to the opinion of a treating physician, the Commissioner is required to explain what weight has been assigned to that opinion, and why. Failure to articulate the reason for discounting such an opinion with a level of specificity that allows the claimant to understand why his physician's views have not been accepted, and to allow the Court to review the ALJ's bases for making that decision, is almost always reversible error. Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007); Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the ALJ explicitly adopted the residual functional capacity finding made by Dr. Gaitens. In doing so, the ALJ found him to be well-qualified and found his opinion to be "consistent with and well-supported by the record as a whole, including the objective clinical and laboratory findings referenced in this decision." The ALJ bolstered this conclusion with the findings reported by Dr. Cho, although he noted that Dr. Gaitens had access to additional records which Dr. Cho did not. (Tr. 22).

Turning to Dr. Fitz's opinion, the ALJ explained that he gave it "little weight." He provided the following reasons for doing so: (1) "the physician's opinion are (sic) inconsistent

-10-

with his own clinical findings (Exhibits (sic) 2F) and are unsupported by the diagnostic testing and longitudinal clinical evidence in the record"; (2) Dr. Fitz "did not reference specific medical findings within the record and/or explain how those medical findings supported the opinion expressed as to the severity of the claimant's impairments and the limitations they imposed on the claimant's functional capacity to work"; and (3) because "the final responsibility for determining whether a claimant is 'disabled' or 'unable to work' is an area reserved to the Commissioner ...." Id. The third reason is clearly boilerplate language which has no application here, since Dr. Fitz made specific determinations about plaintiff's physical abilities which, according to the vocational expert, are inconsistent with the performance of substantial gainful activity, rather than some general statement as to unemployability.  Thus, the Court's analysis will focus on the other two reasons given for discounting Dr. Fitz's opinion.

    The first reason given is, at best, incomplete.  It fails to recognize that there are additional records from Dr. Fitz besides those grouped under Exhibit 2F.  It also does not explain, apart from asserting in conclusory fashion (and in language which could be used in any case like this) exactly how it is that Dr. Fitz' opinion about plaintiff's physical ability is inconsistent with Dr. Fitz' clinical findings, or which of those findings presents that inconsistency.  Further, it fails to state exactly how Dr. Fitz' opinion is unsupported by diagnostic testing; there is a wealth of diagnostic testing, and Dr. Fitz described it in detail in his reports.  Further, the ALJ's decision does not say how Dr. Fitz' opinion is unsupported by the longitudinal clinical evidence.  Dr. Fitz was the source of a good bit of the longitudinal clinical evidence as well, and he cited it in the narrative letter accompanying the form he filled out.  Thus, the

first reason simply lacks the type of detail required when an ALJ decides to give little weight to a treating source's opinion.

What the ALJ may have meant, although he did not say this explicitly, is that in his opinion, the medical evidence - in whatever form it took, whether diagnostic tests, reports of symptoms, or clinical evidence and findings - is inconsistent with a finding that plaintiff was as limited as Dr. Fitz thought. Although the ALJ described and characterized much of this evidence in an earlier portion of his decision (Tr. 20), he did so as part of his determination that plaintiff's testimony was not entirely credible. That is a different determination than the process which must be followed in evaluating a treating source's opinion. Compare 20 C.F.R. §404.1527(d) with 20 C.F.R. §404.1529. Consequently, the Court has little difficulty concluding that this first proffered rationale is simply too vague and too much reliant on the ALJ's own view of how medical evidence supports, or does not support, the treating source's opinion to pass muster under the applicable regulation and case law. See, e.g., Simpson v. Comm'r of Social Security, 344 Fed. Appx. 181, *12 (6th Cir. August 27, 2009)(an ALJ may not make his own medical findings), citing, inter alia, Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996); Harmon v. Astrue, 2011 WL 834138, *10 (N.D. Ohio Feb. 8, 2011)(ALJ may not substitute his own lay judgment of the significance of treatment notes for the functional capacity assessment of the treating physician), adopted and affirmed 2011 WL 825710 (N.D. Ohio Mar. 4, 2011); Friend v. Comm'r of Social Security, 375 Fed. Appx. 543, *8 (6th Cir. April 28, 2010)("it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick"); Sharp v.

-12-

Barnhart, 152 Fed. Appx. 503, *6 (6th Cir. 2005)(an ALJ must "explain why the extensive test results, diagnoses and other information contained in [a claimant's] submitted medical records do not suffice to support his physicians' opinions").

The second reason advanced by the ALJ for discounting Dr. Fitz' opinion fares no better. The ALJ appears to take issue with the way in which Dr. Fitz articulated his reasons for believing that plaintiff was severely limited in his ability to sit, stand and walk; the second reason given for discounting that opinion seems to focus on the claimed absence of any explanation of how that opinion relates to the medical records. However, Dr. Fitz provided a very detailed letter in which he explained exactly which conditions affected plaintiff's ability to sit, stand or walk for prolonged periods of time. These conditions were all diagnosed by objective testing (they were, as Dr. Fitz' letter noted, spinal stenosis and degenerative disc disease, the latter of which the ALJ also found to be a severe impairment, and the former of which is supported by multiple tests and medical opinions). Perhaps the ALJ meant that Dr. Fitz did not directly explain how the diagnoses and test results demonstrated conclusively that plaintiff would have trouble sitting, standing or walking for an eight-hour work day, but as Dr. Gaitens acknowledged, some limitations caused by pain are subjective in nature and will never have a direct correlation with objective measurements. (Tr. 57). In fact, that is one of the reasons why a long-time treating source's opinion on such matters is usually accorded more weight than a doctor who simply reviews the medical records (and who acknowledges, as Dr. Gaitens candidly did, that he could not take any subjective evidence into account in making his evaluation of the claimant, see Tr. 54). The Commissioner's own regulations reflect this principle, stating that "[treating] sources are likely to be the medical professionals most able to

provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone ...." 20 C.F.R. §404.1527(d). The ALJ's second rationale for rejecting Dr. Fitz' opinion, to the extent that it is directed not simply to the way in which Dr. Fitz explained it - and the Court has found nothing deficient about that explanation - but to the foundation for that opinion, is inconsistent with this regulation, and seems to require a treating source to draw an exact correlation between objective testing and the actual pain or limitations experienced by a patient before an ALJ may give the source's opinion any significant weight. This, too, is error.

The Court also agrees with plaintiff that the ALJ did not, as the controlling case law requires, demonstrate compliance with §404.1527(d) after finding that Dr. Fitz' opinion was not to be given controlling weight. The Court of Appeals has explained that

> If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). The ALJ's opinion in this case cites to none of these factors, failing to discuss the fact that Dr. Fitz was a long-time treating source, that he examined plaintiff frequently, that his findings and opinions appeared to be consistent over time, that there was additional support in the evaluation done by Dr. Herceg, and that Dr. Fitz appears to be well-qualified to diagnose and treat

-14-

conditions such as spinal stenosis or degenerative disc disease. Although the Commissioner may be correct that an ALJ does not have to recite in every case that he has considered these various factors, there must be at least some evidence in the record to support the claim that he did so.  This record is totally devoid of such evidence, and the Court simply cannot find from the record that the ALJ followed the proper procedure and considered the appropriate factors which decisions like Cole and which §404.1527(d) require an ALJ to consider.  Thus, the decision, as it currently stands, cannot be affirmed.

This conclusion largely moots the second portion of plaintiff's first claim of error, which is directed to the foundation of Dr. Gaitens' opinion.  However, it is worth noting that Dr. Gaitens did appear to be unaware of certain important parts of the medical record, including, as plaintiff points out in his memorandum, evidence of occasional inability to detect reflexes (particularly a patellar reflex), evidence of positive straight leg raising, and evidence of decreased range of motion. Such matters are unquestionably part of the medical record in this case, and should the ALJ deem it necessary to re-evaluate Dr. Gaitens' testimony after giving the appropriate weight to Dr. Fitz' opinion, there should be some discussion about why these omissions either do or do not detract from the weight to be given to Dr. Gaitens' testimony.

Plaintiff's next argument is that his counsel was improperly precluded from eliciting testimony about his work history.  He characterizes this as a due process violation.  The focus of this argument is questions about plaintiff's prior work as a gate guard.  A review of the record shows, however, that all of the information material to evaluating that job was eventually brought out through questioning, and plaintiff does not really argue otherwise - his point goes more to the timing of these

questions than the issue of whether they were eventually answered.  Plaintiff cites no case authority in support of this argument, and although claimants for social security benefits do have some procedural due process rights, see, e.g., Day v. Shalala, 23 F.3d 1052 (6th Cir. 1994), the Court can find no violation of procedural due process here.  The second claimed error lacks merit.

Finally, plaintiff argues that the hypothetical question posed to Mr. Rosenthal was not supported by substantial evidence.  The specific issue he raises relates to his use of narcotic pain medication.  Plaintiff appears to be correct that the ALJ misunderstood or misinterpreted the record about his prescription pain medication, and that he did take at least one narcotic medication, Vicodin, on a regular basis.  However, Dr. Gaitens was aware of the use of that medication and did not impose restrictions on plaintiff's work abilities beyond the need to avoid unprotected heights or moving machinery.  Thus, if the ALJ had been entitled to rely on Dr. Gaitens' assessment of plaintiff's abilities, there would have been no error concerning the effect of plaintiff's medication.  Of course, this issue is largely mooted by the Court's determination that the current administrative decision did not properly determine that Dr. Gaitens' view of plaintiff's functional capacity was the correct one.

The remaining issue is what disposition of the case is appropriate.  If the Secretary's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify, or reverse the Secretary's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).  The primary factor to be considered is whether the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would

merely involve the presentation of cumulative evidence. See Bailey v. Comm'r of Social Security, 173 F.3d 428, *5 (6th Cir. Feb. 2, 1999)(unreported), citing Sayers v. Gardner, 380 F.2d 940 (6th Cir. 1967); Guy v. Schweiker, 532 F.Supp. 493, 499 (S.D. Ohio 1982); Estes v. Harris, 512 F.Supp. 1106, 1116 (S.D. Ohio 1981). However, "when the Secretary misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." Faucher v. Sec'y of HHS, 17 F.3d 171, 175-76 (6th Cir. 1994).

Here, although Dr. Fitz' opinion would support a finding of disability, the error committed by the ALJ was not properly weighing that opinion or articulating an adequate basis for giving it little or no weight. That is a misapplication of the regulation relating to the opinions of treating sources. A remand would not necessarily result in the mere presentation of cumulative evidence or an automatic award of benefits. Therefore, in this case, remand is the proper remedy.

### VIII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings, pursuant to 42 U.S.C. §405(g), sentence four.

### IX. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge